IN THE DISTRICT COURT OF THE UNITED STATES FOR THE

MIDDLE DISTRICT OF ALABAMA, NORTHERN DIVISION

| | | |
|---|---|---|
| LARRY STOUDMIRE, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | CIVIL ACTION NO. |
| v. | ) | 2:12cv1055-MHT |
| | ) | (WO) |
| U.S. XPRESS, INC., | ) | |
| | ) | |
| Defendant. | ) | |

OPINION

Plaintiff Larry Stoudmire brought this action charging race discrimination against his former employer, defendant U.S. Xpress, Inc.  He claims that the company's conduct violated Title VII of the Civil Rights Act of 1964, as amended (42 U.S.C. §§ 1981a, 2000e to 2000e-16). Jurisdiction is proper under 28 U.S.C. § 1331 (federal question) and 42 U.S.C. § 2000e-5(f)(3) (Title VII).  The case is now before this court on motions from Stoudmire (to set aside the court's previously entered judgment and reinstate the case, abrogate the settlement agreement between the parties, and require his former attorney to

return a fee and dismiss a fee lien) and U.S. Xpress (to enforce the settlement agreement).

## I. BACKGROUND

### A.

Stoudmire was a truck driver for U.S. Xpress, a trucking company. After he was injured on the job, he brought a lawsuit in state court to recover claimed workers' compensation benefits. That lawsuit concluded in a settlement between Stoudmire, lacking an attorney and representing himself, and the company. The settlement agreement stated that, "Employee hereby resigns his employment and releases employer ... from any and all claims he has or may have in connection with his employment." Petition and Settlement (Doc. No. 11-1) at 3-4. The state court approved the settlement.

B.

Before the workers' compensation settlement was reached and approved by the state court, Stoudmire retained an attorney, Julian McPhillips, to represent him in a race-discrimination lawsuit against U.S. Xpress. The federal-court complaint charged that Stoudmire's supervisor at U.S. Xpress told other employees that Stoudmire was a "no-good nigger."  Amended Compl. (Doc. No. 6) ¶ 10.  Stoudmire complained about the incident to the company's human relations department, and, several months later, the department responded, telling him that unspecified disciplinary action had been taken against the supervisor.  Not long after that, the company contacted Stoudmire again, this time to tell him that he was being transferred to a job that Stoudmire believed was far less desirable than his current position.  He alleged that the company gave him an ultimatum: he had to decide, immediately, whether to accept the transfer or resign his employment with U.S. Xpress.  He chose to

3

leave the company.  He contended that his supervisor was
never actually disciplined and, on the contrary, the
company's ultimatum was retaliatory for his having
complained about discrimination.


                            C.

     Shortly after this federal lawsuit began, U.S. Xpress
filed a motion to dismiss.  Among other reasons for
dismissing the case, the company argued that the prior
state-court workers' compensation settlement, which
released U.S. Xpress from "any and all claims [Stoudmire]
has or may have in connection with his employment,"
waived the former employee's right to bring the current
race-discrimination claim.  Def.'s Br. (Doc. No. 11-6) at
18-19 (quoting Petition and Settlement (Doc. No. 11-1) at
3-4).  McPhillips was surprised to see the argument, as
it was the first time he had become aware of the
settlement.  Stoudmire was also surprised, as he
understood the workers' compensation settlement (which he

                            4

signed without consulting any lawyer) to affect disability-related claims only.  He was astounded to learn that he may have already waived his race-discrimination claim in settling that lawsuit, a wholly unrelated matter to the present case, as he saw it.

McPhillips researched the issue and concluded that there was a substantial chance that the court would dismiss this federal case on the basis of the earlier state-court settlement; the attorney also feared that there was some risk that Stoudmire would be subject to sanctions for bringing a claim he had already waived. McPhillips therefore contacted U.S. Xpress to offer settling the matter (and not contesting the motion to dismiss) for a small sum.  McPhillips and U.S. Xpress agreed to another settlement, this one for $ 2,500. Although McPhillips was disappointed with the figure, he thought it was the best result he could obtain for Stoudmire, given the perceived likelihood of dismissal.

Stoudmire met McPhillips in the attorney's office to discuss the proposal.  A written agreement was prepared and ready for signing.  Stoudmire's and McPhillips's recollections and interpretations of the meeting diverge. Stoudmire states that McPhillips did not afford him time to read the full agreement and that the attorney did not explain adequately the agreement's provisions, instead imploring him to sign without delay.  In Stoudmire's telling, the attorney bore down on him and demanded that he sign immediately.  McPhillips insists, in stark contrast to that version of events, that he explained the agreement fully and afforded Stoudmire more than adequate time to read it and ask questions.  The attorney concedes that Stoudmire expressed hesitation, but he maintains that Stoudmire was eventually convinced that signing was in his best interest.  Regardless of how the decision was made, Stoudmire acknowledges that he signed the settlement agreement and consented to McPhillips

transmitting it to U.S. Xpress.  This court dismissed this federal lawsuit pursuant to the parties' agreement.

### D.

Days later, McPhillips, having received the promised $ 2,500 from U.S. Xpress, contacted Stoudmire to remit payment.  Stoudmire told the attorney that he had a change of heart.  He refused to accept the payment, insisting that he will continue pursuing the race-discrimination claim regardless of whether McPhillips remained as his counsel.  McPhillips withdrew from representation, explaining that he believed Stoudmire was bound by the settlement and he could no longer pursue the lawsuit.

## II. DISCUSSION

As stated, this case is now before this court on the following motions: Stoudmire's motions to set aside the court's previously entered judgment and reinstate the

case, abrogate the settlement agreement between the parties, and require his former attorney to return a fee he paid and dismiss a fee lien; and U.S. Xpress's motion to enforce the settlement agreement.

### A.

A district court ordinarily has the power to enforce a settlement agreement entered into by litigants while litigation is pending before that court. <u>Jowers v. Bd. of Pardons & Paroles</u>, 2013 WL 424726, at *1 (M.D. Ala. Feb. 4, 2013) (Thompson, J.) (citing <u>Mass. Cas. Ins. Co. v. Forman</u>, 469 F.2d 259, 260 (5th Cir. 1972) (per curiam)).[1]   If the parties reach settlement and voluntarily dismiss the lawsuit, but a subsequent dispute over the settlement arises, the court may adjudicate the matter only if the prior dismissal order expressly retained jurisdiction to do so.   <u>Kokkonen v. Guardian</u>

---

1.   The Eleventh Circuit has adopted as precedent all decisions of the former Fifth Circuit rendered prior to October 1, 1981.   <u>Bonner v. City of Prichard</u>, 661 F.2d 1206, 1207 (11th Cir. 1981) (en banc).

<u>Life Ins. Co.</u>, 511 U.S. 375, 381–82 (1994).  Here, the court's prior judgment dismissing the case expressly retained jurisdiction over the settlement, granting "leave to any party to file, within 49 days, a motion to have the dismissal set aside and the case reinstated or the settlement enforced, should the settlement not be consummated."  Judgment (Doc. No. 13).  Now, since a settlement dispute has arisen, the court will grant Stoudmire's motion to set aside the judgment and reinstate the case so that the court can adjudicate whether the parties have a settlement agreement that should be enforced.

In determining whether a valid, enforceable settlement agreement has been reached by the parties, federal courts have differed on the source of law to apply.  Courts have decided, on some occasions, that federal common law governs and, on other occasions, that state law governs.  <u>See</u> <u>Jowers</u>, 2013 WL 424726, at *1 (citing cases taking both approaches); <u>Gamewell Mfg.,</u>

9

Inc. v. HVAC Supply, Inc., 715 F.2d 112, 113-16 (4th Cir. 1983) (same).   In this case, because the operative principles under federal common law and Alabama law do not materially differ, "the court need not resolve which body of law applies."   Jowers, 2013 WL 424726, at *1 (quotation marks and citation omitted).

Settlement agreements are contracts, and, like other contracts, once a party has manifested assent to an agreement that meets all requirements for a legally binding contract, the party is bound.   See, e.g., Cia Anon Venezolana De Navegacion v. Harris, 374 F.2d 33, 35 (5th Cir. 1967) ("Federal courts have held under a great variety of circumstances that a settlement agreement once entered into cannot be repudiated by either party and will be summarily enforced."); Nero v. Chastang, 358 So. 2d 740, 743 (Ala. Civ. App. 1978) ("The law in Alabama is clear in that agreements made in settlement of litigation are as binding on parties thereto as any other contract.").   Here, Stoudmire signed the settlement

agreement, thereby manifesting his assent. <u>Southern Energy Homes, Inc. v. Hennis</u>, 776 So. 2d 105, 108 (Ala. 2000) ("Ordinarily, [assent] is manifested by a signature.") (emphasis omitted). Therefore, unless he shows some reason why the agreement is invalid, he is bound by it.

Stoudmire's first argument for the contract's invalidity is that he did not exercise his own free will in signing it and that, instead, he was forced to sign it by McPhillips. Under the "undue influence" principle of contract law, "[i]f a party's manifestation of assent is induced by one who is not a party to the transaction" (here, McPhillips), "the contract is voidable by the victim" (here, Stoudmire).[2]  Restatement (Second) of Contracts § 177 (1981).  For that rule to apply, "the

_____

2.  This rule does not apply if "the other party to the transaction" (here, U.S. Xpress) "in good faith and without reason to know of the undue influence either gives value or relies materially on the transaction." Restatement (Second) of Contracts § 177 (1981).  Since Stoudmire has not yet accepted U.S. Xpress's payment, that exception has no bearing here.

11

will of the influencing party [must have] so overpowered
the will of the other party that the other party's act
essentially became the act of the influencing party."
Fortis Benefits Ins. Co. v. Pinkley, 926 So. 2d 981, 988
(Ala. 2005) (emphasis omitted).

Here, the court is not convinced that Stoudmire's
will was so overpowered.  Admittedly, from Stoudmire's
point of view, he probably viewed McPhillips's comments
as overbearing, for Stoudmire was hearing something he
did not want to hear: that, in McPhillips's professional
judgment, Stoudmire's federal race-discrimination lawsuit
would likely be dismissed because of Stoudmire's waiver
of claims in his state workers' compensation lawsuit.
But an attorney's relaying of bad news, as long as that
news has some reasonable basis in fact and law (as were
the circumstances here) does not mean the attorney is
overbearing; instead, it means the attorney is being
professionally   honest.     An   attorney's   being
professionally honest does not mean the attorney is being

12

overbearing.   Indeed, if an attorney were to fail to be professionally honest, he could leave himself open to liability for malpractice or ethical violations.

Therefore, the court does not credit Stoudmire's testimony that his attorney's pleadings to sign the agreement were exerted with such force and to such a degree that Stoudmire's decision was not his own. Rather, it seems that Stoudmire, understandably upset at the regrettable circumstances creating this predicament, begrudgingly accepted the settlement offer, and, in doing so, he exercised his own choice in an unfortunate situation.   Stoudmire's undue-influence defense is meritless.

Second, Stoudmire contends that the agreement, which forfeits his discrimination claim for a mere $ 2,500, is unfair.  To be sure, "[i]f a contract or term thereof is unconscionable at the time the contract is made a court may refuse to enforce the contract."   Restatement (Second) of Contracts § 208 (1981).  Alabama courts have

13

stated that a contract is "unconscionable" where it is "such as no man in his sense and not under delusion would make on the one hand, and as no honest and fair man would accept on the other." <u>Blue Cross Blue Shield of Alabama v. Rigas</u>, 923 So. 2d 1077, 1086 (Ala. 2005) (punctuation and citation omitted).  To determine whether a contract is unconscionable, courts take a number of considerations into account, including "(1) whether there was an absence of meaningful choice on one party's part, (2) whether the contractual terms are unreasonably favorable to one party, (3) whether there was unequal bargaining power among the parties, and (4) whether there were oppressive, one-sided, or patently unfair terms in the contract." <u>Id</u>. at 1086 (citation omitted).

To decide unconscionability in this case, it is critical to understand precisely what is argued to be unconscionable.  Here, the state workers' compensation settlement, which waived all claims against the company regardless of their nature (that is, if U.S. Xpress's

interpretation of the agreement is to be accepted), is not the agreement before the court. There, the underlying lawsuit was one in which Stoudmire sought compensation for injuries incurred on the job. In settling that case, U.S. Xpress, represented by sophisticated lawyers and aware that it was being charged with serious allegations of racism, may very well have duped Stoudmire, who had no attorney advising him, into waiving his race-discrimination claim. This court credits Stoudmire's testimony that, when he agreed to the state-court settlement, he was completely unaware of the effect it might have on his federal race-discrimination case. Indeed, if the state-court settlement were before the court, it would present a serious question of unconscionability.

Unfortunately for Stoudmire, as stated the state-court settlement is not at issue; rather, the court must decide the enforceability of the subsequent $ 2,500 federal settlement, and circumstances in that regard are significantly different. That agreement was made in the

15

face of a motion to dismiss that Stoudmire's experienced attorney, in his professional judgment, believed was likely to be granted, and, while, as stated, the issue presented a serious question, there is nothing before this court to suggest that that professional judgment was not reasonable.  In that context, the $ 2,500 settlement does not shock the conscience.  See Union Camp Corp. v. Dyal, 460 F.2d 678, 689-90 (5th Cir. 1972) ("The final argument offered on behalf of J. Edgar Dyal is that the agreement obliges him to sell at $ 15 an acre property worth more than ten times that amount.  But this is only a vision of streets paved with gold, dependent upon Dyal succeeding in all his demands.  It does not take into account what was really bought and sold--the chances of success or failure."); In re Yohannes, 2007 WL 2034301, at *3 (S.D.N.Y. July 17, 2007) (Swain, J.) (settlement agreement in mortgage dispute was not unconscionable because the fact that both parties faced uncertainty regarding validity of the mortgage was taken into account in choosing settlement amount).

16

In short, the court recognizes that the circumstances leading up to Stoudmire's settlement in this lawsuit were regrettable, and it is eminently reasonable that a person in Stoudmire's position would feel wronged. Regardless, upon the advice of experienced counsel, he elected to accept a small payment in lieu of challenging the company. Having done so, the law does not grant him a right to change his mind. Stoudmire's unconscionability defense is meritless.

The court will therefore deny Stoudmire's motion to abrogate the settlement agreement and will grant U.S. Xpress's motion to enforce the settlement agreement.


### B.

The court now turns to the fee dispute between Stoudmire and McPhillips. Two federal cases are at issue.

The first federal case is the one now before this court: his race-discrimination case. Before instituting this lawsuit, Stoudmire and McPhillips agreed that

17

Stoudmire would pay the court's $ 350 filing fee but would not pay any attorney's fee up front, although McPhillips would, for his fee, be entitled to 50 % of whatever sum was recovered in the lawsuit, which ended up being $ 1,250 (half of the $ 2,500 settlement).  As to the $ 1,250, Stoudmire stated at the court's evidentiary hearing that he no longer sought that money, and, therefore, it is unnecessary for this court to resolve the mooted issue. (The issue is moot for a second reason as well.  Stoudmire's attorney, McPhillips said he is now willing to forfeit his $ 1,250 and that Stoudmire can have the entire $ 2,500.  Stoudmire can, therefore, pick up the entire $ 2,500 whenever he wants.)

The second federal case was filed by McPhillips, on Stoudmire's behalf, to obtain a right-to-sue letter from the Equal Employment Opportunity Commission, a document needed to begin the current race-discrimination lawsuit. See Stoudmire v. Equal Emp't Opportunity Comm'n, No. 2:12cv574 (M.D. Ala. filed July 3, 2012) (Watkins, J.). Stoudmire paid McPhillips close to $ 3,000 in fees and

18

court costs to bring this lawsuit, which is now closed. Stoudmire seeks a refund of the fees.

"Federal courts are courts of limited jurisdiction. They possess only that power authorized by Constitution and statute," Kokkonen, 511 U.S. at 377, which includes the power to adjudicate civil actions arising under federal laws, 28 U.S.C. § 1331. Stoudmire's underlying race-discrimination claim in the current case arises under federal law, the Civil Rights Act. The dispute he has with McPhillips over fees in another, closed lawsuit is twice removed. First, it relates to another lawsuit over which this court has absolutely no jurisdiction. Second, it relates to a lawsuit that is now closed and there is no evidence that that lawsuit ever reached, or could now reach, the issue of Stoudmire's fees with his attorney. Stoudmire's fee dispute with McPhillips is, at most, wholly a matter of state law for state courts.

Stoudmire's motions for return of fee and to dismiss the fee lien will be denied.

***

The court will, therefore, enter a judgment providing for the following: first, in accordance with the court's prior judgment reserving jurisdiction to adjudicate post-judgment settlement disputes, granting Stoudmire's motion to set aside the judgment and reinstate the case; second, denying Stoudmire's motion to abrogate the settlement agreement; third, denying Stoudmire's motions to have McPhillips refund the fee and to dismiss the fee lien; fourth, granting U.S. Xpress's motion to enforce the settlement agreement; and, lastly, ordering the parties to comply with that agreement.  Because the agreement includes, among its provisions, a requirement that Stoudmire's lawsuit be dismissed, the court will dismiss his federal race-discrimination claim.  However, this dismissal will not be of the entire lawsuit, for the court will retain jurisdiction to enforce the settlement agreement; in other words, the aspect of this case

20

regarding enforcement of the settlement will not be dismissed.

DONE, this the 3rd day of April, 2013.

/s/ Myron H. Thompson
UNITED STATES DISTRICT JUDGE